115 Cal.Rptr.2d 109 (2002)
94 Cal.App.4th 1358
The PEOPLE, Plaintiff and Respondent,
v.
SENECA INSURANCE COMPANY, Defendant and Appellant.
No. B148121.
Court of Appeal, Second District, Division Three.
January 7, 2002.
As Modified January 9, 2002.
*111 Nunez & Bernstein and E. Alan Nunez, Fresno, for Defendant and Appellant.
Steve Cooley, District Attorney, Brent Riggs and Fred Klink, Deputy District Attorneys, for Plaintiff and Respondent.
*110 KLEIN, P.J.
Seneca Insurance Company (Seneca), the surety on a bail bond, appeals an order denying its motion to discharge a bond forfeiture and to exonerate bail.[1]
Penal Code section 1166[2] provides that when a guilty verdict is rendered against a defendant who is on bail, the trial court is required to commit the defendant to custody unless, upon considering five factors enumerated in the statute, including the defendant's flight risk and public safety, the trial court concludes the evidence supports its decision to allow the defendant to remain on bail. The statute also provides for exoneration of bail upon the defendant's commitment to custody.
In the instant case, the defendant was on bail, but was convicted pursuant to a guilty plea. The issues presented are (1) whether section 1166 applies when a defendant's conviction is pursuant to a guilty plea as contrasted with a guilty verdict; and (2) whether the trial court is required to articulate its reasons on the record for allowing a defendant to remain on bail pursuant to section 1166.
Based on our review of the legislative history, we conclude section 1166 applies equally to a defendant convicted pursuant to a plea of guilty. Further, in allowing a defendant to remain on bail following a guilty verdict or guilty plea (§ 1166), the trial court must articulate its rationale on the record; otherwise the bail is exonerated. Therefore, the order is reversed with directions.

FACTUAL AND PROCEDURAL BACKGROUND
On September 11, 1999, Seneca issued a $70,000 bail bond to secure the release of defendant Seung Hyun Noh (Noh) from custody.
On May 23, 2000, Noh appeared in court and entered a guilty plea on five counts of receiving stolen property (Pen.Code, § 496, subd. (a)), pursuant to a plea bargain whereby Noh would be sentenced to 16 months in state prison. Noh was ordered to appear for sentencing on June 21, 2000.
On June 21, 2000, Noh failed to appear and a bench warrant was issued. The trial court ordered the bail bond forfeited for the failure to appear and notice of forfeiture was mailed on July 18, 2000.
*112 On November 15, 2000, Seneca filed a motion to vacate the forfeiture and exonerate bail. Seneca argued that prior to allowing Noh to remain free on bail after he entered his guilty plea, the trial court was required to conduct an evidentiary hearing and make certain findings pursuant to section 1166 regarding Noh's flight risk and threat to the community, and the trial court's failure to comply with section 1166 was a jurisdictional error that exonerated bail by operation of law.
In opposition, the People claimed Seneca's reliance on section 1166 was misplaced because the statute pertains to a defendant remaining on bail following a "verdict" in a contested trial, and the statute has no application to a defendant remaining on bail following a plea of guilty.
On December 13, 2000, the matter came on for hearing. After considering the legislative history of section 1166, the trial court denied Seneca's motion.[3]
This appeal followed.

CONTENTIONS
Seneca contends the bail was exonerated by operation of law when the trial court failed to comply with the mandate of section 1166.

DISCUSSION

1. Nature of bail forfeiture proceedings requires strict construction of section 1166 in favor of surety.

As a threshold matter, because the law disfavors forfeitures, including the forfeiture of bail, section 1166 must be strictly construed in favor of the surety to avoid the harsh results of forfeiture. (See People v. Ranger Ins. Co. (1992) 9 Cal.App.4th 1302, 1305, 12 Cal.Rptr.2d 343.)

2. Criteria for a defendant remaining on bail following conviction.

By way of background, "[i]n setting, reducing, or denying bail, the judge or magistrate shall take into consideration the protection of the public, the seriousness of the offense charged, the previous criminal record of the defendant, and the probability of his or her appearing at trial or hearing of the case. The public safety shall be the primary consideration." (§ 1275, subd. (a), italics added.)[4]
The pertinent statute, section 1166, pertains to the criteria for a defendant remaining on bail following conviction. Section 1166, as amended most recently in 1999, states: "If a general verdict is rendered against the defendant, or a special verdict is given, he or she must be remanded, if in custody, or if on bail he or she shall be committed to the proper officer of the county to await the judgment of the court upon the verdict, unless, upon considering [(1)] the protection of the public, [(2)] the seriousness of the offense charged and proven, [(3)] the previous criminal record of the defendant, [(4)] the probability of the defendant failing to appear for the judgment of the court upon the verdict, and [(5)] public safety, the *113 court concludes the evidence supports its decision to allow the defendant to remain out on bail. When committed, his or her bail is exonerated, or if money is deposited instead of bail it must be refunded to the defendant or to the person or persons found by the court to have deposited said money on behalf of said defendant." (Stats.1999, ch. 570 (A.B.476), § 1, italics added.)
The 1999 amendment rewrote the section, which previously read: "If a general verdict is rendered against the defendant, or a special verdict is given, he must be remanded, if in custody, or if on bail he may be committed to the proper officer of the county to await the judgment of the court upon the verdict. When committed his bail is exonerated, or if money is deposited instead of bail it must be refunded to the defendant or to the person or persons found by the court to have deposited said money on behalf of said defendant." (Stats. 1935, ch. 657, p. 1814, § 5, italics added; 50B West's Ann. Pen.Code, 2001 Cumulative Pocket Part, Hist. & Stat. Notes foil. § 1166, p. 128.)
Thus, under the prior version of section 1166, the trial court had discretion upon conviction to order an on-bail defendant into custody. However, under the current statute, the trial court is required to order an on-bail defendant into custody, unless the court finds, after considering the five specifically enumerated factors, that the defendant may remain on bail to await sentencing. (§ 1166.)

3. Applicability of section 1166 where a defendant's conviction is based on a guilty plea rather than a guilty verdict.

As indicated, Noh's conviction was pursuant to a guilty plea rather than a guilty verdict. The issue thereby presented is whether section 1166 applies with equal force to a defendant convicted by a guilty plea, so that the trial court, upon accepting the plea, was required by section 1166 to order Noh into custody unless, after considering the factors enumerated in the statute, it determined it was appropriate to permit Noh to remain on bail.
The interpretation of section 1166 is a question of law which we review de novo. (See Harbor Fumigation, Inc. v. County of San Diego Air Pollution Control Dist. (1996) 43 Cal.App.4th 854, 859, 50 Cal. Rptr.2d 874.)

a. Principles of statutory interpretation.

"The touchstone of statutory interpretation is the probable intent of the Legislature. When interpreting a statute, we must ascertain legislative intent so as to effectuate the purpose of a particular law. Of course our first step in determining that intent is to scrutinize the actual words of the statute, giving them a plain and commonsense meaning. (California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist. (1997) 14 Cal.4th 627, 632-633 [59 Cal.Rptr.2d 671, 927 P.2d 1175].) When the words are clear and unambiguous, there is no need for statutory construction or resort to other indicia of legislative intent, such as legislative history. (California Fed, Savings & Loan Assn. v. City of Los Angeles (1995) 11 Cal.4th 342, 349 [45 Cal.Rptr.2d 279, 902 P.2d 297].) But language that appears unambiguous on its face may be shown to have a latent ambiguity; if so, a court may turn to customary rules of statutory construction or legislative history for guidance. (Stanton v. Panish (1980) 28 Cal.3d 107, 115 [167 Cal.Rptr. 584, 615 P.2d 1372].)" (Quarterman v. Kefauver (1997) 55 Cal.App.4th 1366, 1371, 64 Cal.Rptr.2d 741.)
Here, the language of section 1166 refers only to on-bail defendants found guilty *114 by general or special verdicts, requiring their evaluation by a trial court to remain on bail. The statute does not make specific mention of on-bail defendants convicted by guilty pleas. As explained below, because section 1166 is ambiguous in this regard, we are required to determine whether the statute applies irrespective of whether the conviction is pursuant to a verdict or plea.

b. A guilty plea is, for most purposes, the legal equivalent of a verdict of guilty reached by a jury.

By way of background, a "general verdict upon a plea of not guilty is either `guilty' or `not guilty,' which imports a conviction or acquittal of the offense charged in the accusatory pleading." (§ 1151.) A "special verdict is that by which the jury finds the facts only, leaving the judgment to the Court." (§ 1152.)
Alternatively, a defendant may plead guilty to the offense charged, and the plea, whether to a misdemeanor or felony, may be oral or in writing. (§ 1017, subd. (1).) "A guilty plea is, for most purposes, the legal equivalent of a verdict of guilty reached by a jury. (People v. Chadd (1981) 28 Cal.3d 739, 748 [170 Cal. Rptr. 798, 621 P.2d 837]; 4 Witkin & Epstein, Cal. Criminal Law [(2d ed. 1989)] Proceedings Before Trial, § 2139, pp. 2507-2508.)" (People v. Valladoli (1996) 13 Cal.4th 590, 601, 54 Cal.Rptr.2d 695, 918 P.2d 999, italics added.) For example, regarding double jeopardy, a plea of guilty is the equivalent of a verdict of guilty for purposes of the defense of former jeopardy in a subsequent proceeding. (People v. Mims (1955) 136 Cal.App.2d 828, 830, 289 P.2d 539; 4 Witkin & Epstein, Cal.Criminal Law (3d ed. 2000) Pretrial Proceedings, § 259, pp. 467-468.)
Because a guilty plea is for most purposes the legal equivalent of a guilty verdict (People v. Valladoli, supra, 13 Cal.4th at p. 601, 54 Cal.Rptr.2d 695, 918 P.2d 999), the absence of any reference to guilty pleas in section 1166 creates an ambiguity. Therefore, we resort to the legislative intent behind section 1166 to ascertain whether the statute's requirements following a verdict of guilty are equally applicable following a conviction based upon a plea of guilty.

c. Legislative history confirms that legislative intent was to apply section 1166 to a defendant awaiting sentencing after either guilty verdict or guilty plea.

It is "well established that reports of legislative committees and commissions are part of a statute's legislative history and may be considered when the meaning of a statute is uncertain. [Citations.] ... The rationale for considering committee reports when interpreting statutes is similar to the rationale for considering voter materials when construing an initiative measure. In both cases it is reasonable to infer that those who actually voted on the proposed measure read and considered the materials presented in explanation of it, and that the materials therefore provide some indication of how the measure was understood at the time by those who voted to enact it." (Hutnick v. United States Fidelity & Guaranty Co. (1988) 47 Cal.3d 456, 465, fn. 7, 253 Cal. Rptr. 236, 763 P.2d 1326.) Therefore, legislative staff analyses are properly the subject of judicial notice (McDowell v. Watson (1997) 59 Cal.App.4th 1155, 1161-1162, fn. 3, 69 Cal.Rptr.2d 692), and we take judicial notice of legislative analyses of AB 476 as an aid to the interpretation of section 1166. (Evid.Code, §§ 452, subd. (c), 455, 459.)
A legislative analysis for the Senate Committee on Public Safety states in relevant part: "Need for This Bill [¶] According to background supplied by the author: [¶] The intent of this bill is to assure that a *115 judge has an opportunity to examine the record of a convicted individual who is pending sentencing after conviction or guilty plea. It should be obvious that individuals who are free on bail after conviction, but who have not been sentenced, pose a greater flight risk than other persons on bail." (Sen. Com. on Public Safety, Analysis of Assem. Bill No. 476 (1999-2000 Reg.Sess.) as amended July 6, 1999, italics added.)
Similarly, a Senate Third Reading Analysis states: "ARGUMENTS IN SUPPORT: According to the background supplied by the author, the intent of this bill is to assure that a judge has an opportunity to examine the record of a convicted individual who is pending sentencing after conviction or guilty plea." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d Reading Analysis of Assem. Bill No. 476 (1999-2000 Reg.Sess.) as amended Aug. 17, 1999, italics added.)
This language makes it clear the Legislature expected trial judges to carefully evaluate convicted defendants, whether pursuant to guilty verdicts or pleas, before allowing such defendants to remain on bail. In view of the stated intent, and because such a conclusion is eminently reasonable, we conclude section 1166 applies regardless of whether a defendant is convicted pursuant to a verdict or plea.[5] In either case, once an on-bail defendant is convicted, the trial court is mandated to scrutinize the defendant pursuant to the factors of section 1166 before allowing the defendant to remain on bail pending sentencing.

4. The record before this court indicates the trial court failed to comply with section 1166; therefore, the bond must be exonerated.

a. Trial court must articulate on the record its reasons for allowing a defendant to remain on bail pursuant to section 1166.

The dictates of section 1166 requires the trial court to commit a defendant to custody following conviction unless, "upon considering" the enumerated five factors including the defendant's flight risk and public safety, the trial court "concludes the evidence supports its decision to allow the defendant to remain out on bail." (§ 1166.) The next issue before this appellate court is whether, upon considering the above factors, the trial court is required to articulate on the record the reasons for its ruling.
Section 1166 does not expressly direct the trial court to specify the reasons for its decision. By way of comparison, section 1270.1, subdivision (d), requires the trial court to "state the reasons" for setting bail in an amount that is either more or less than the amount contained in the bail schedule for the offense. Similarly, section 1272.1, subdivision (c), directs the court to "include a brief statement of reasons in support of an order granting or denying a motion for bail on appeal." Likewise, section 1275, subdivision (c), requires the court, before reducing bail below the amount established by the bail schedule for a person charged with a serious or violent felony, to "make a finding of unusual circumstances and shall set forth those facts on the record." Nonetheless, the absence of such an express requirement in section 1166 does not end our inquiry.
In re Podesto (1976) 15 Cal.3d 921, 127 Cal.Rptr. 97, 544 P.2d 1297 is instructive. That decision involved section 1272, which provides that bail on appeal after a felony conviction is a matter within the court's discretion. (Id. at p. 929, 127 Cal.Rptr. 97, *116 544 P.2d 1297.) Podesto acknowledged the primary purpose of bail after conviction is to assure that defendant will not flee the jurisdiction (id. at p. 930, 127 Cal.Rptr. 97, 544 P.2d 1297), but the courts do not have unbridled discretion in this area. (Id. at p. 933.) Podesto set forth guidelines to assist courts in making reasoned determinations regarding postconviction bail applications by felons. Podesto held that in exercising discretion under section 1272, "courts may consider (1) the likelihood of the defendant's flight, (2) the potential danger to society posed by the defendant's release, and (3) the frivolousness or lack of diligence in defendant's prosecution of his appeal; ..." (Id. at p. 933, 127 Cal.Rptr. 97, 544 P.2d 1297, italics deleted.)
Pursuant to its "supervisory authority over state criminal procedure" (In re Podesto, supra, 15 Cal.3d at p. 938, 127 Cal. Rptr. 97, 544 P.2d 1297), the Supreme Court in Podesto further held that trial courts in the future "should render a brief statement of reasons in support of an order denying a motion for bail on appeal. [Citations.] Such a statement need not include conventional findings of fact; all that is required `is that the basis for the order be set forth "with sufficient specificity to permit meaningful review." ` [Citations.]" (15 Cal.3d at p. 938, 127 Cal.Rptr. 97, 544 P.2d 1297, italics added.)
Podesto stressed "a requirement of articulated reasons to support a given decision serves a number of interests. In the first place, .. . the statement of such reasons will frequently be essential to any meaningful review of the decision. Secondly, a requirement of articulated reasons acts as an inherent guard against the careless decision, insuring that the [trial court itself] analyzes the problem and recognizes the grounds for [its] decision. Finally, articulated reasons aid in preserving public confidence in the decision-making process `by helping to persuade the parties [and the public] that ... decision-making is careful, reasoned and equitable.' [Citation.]" (In re Podesto, supra, 15 Cal.3d at p. 937, 127 Cal.Rptr. 97, 544 P.2d 1297; accord In re Pipinos (1982) 33 Cal.3d 189, 198, 187 Cal.Rptr. 730, 654 P.2d 1257.)
By a parity of reasoning, and because section 1166 mandates commitment to custody upon conviction unless certain criteria are met, we conclude that in allowing a defendant to remain on bail pursuant to section 1166, the trial court is required to articulate a brief statement of reasons on the record in support of its decision. Podesto`s rationale for requiring the trial court to render a brief statement of reasons for denying a motion for bail pending appeal (§ 1272) is equally applicable where a defendant seeks to remain on bail following a guilty verdict or guilty plea (§ 1166), and a statement of reasons by the lower court is likewise essential for this court to fulfill its responsibility to conduct a meaningful appellate review of such a ruling.

b. Trial court's failure to reassess Noh's eligibility for bail and failure to articulate reasons on the record for allowing Noh to remain on bail requires vacation of bail forfeiture.

A requirement of making a proper record is also important to sureties seeking exoneration of bail. Sureties ordinarily are not present when a trial court renders its decision to allow a defendant to remain on bail following conviction. (See County of Orange v. Allied Fidelity Ins. Co. (1984) 161 Cal.App.3d 510, 513, 207 Cal.Rptr. 506 [recognizing that sureties cannot afford to maintain "a daily vigil at the courthouse"].)
Here, the record indicates Noh appeared in court on May 23, 2000, and was represented by counsel. Noh was advised *117 of and explicitly waived his rights and a written advisement of rights and waivers was filed. The trial court found each such waiver was knowingly, understandingly and explicitly made, and counsel joined in the waivers. Noh then entered a plea of guilty to all five counts. The trial court found there was a factual basis for Noh's plea, accepted the plea, and ordered Noh to appear for sentencing on June 21, 2000. Specifically, the reporter's transcript reflects that upon accepting Noh's guilty plea and convicting him, the trial court stated: "Mr. Noh, you have a right to a speedy sentencing. Do you waive and give up that right and agree that the sentencing in this matter will be on the 21st of June?" Noh agreed. The trial court then ruled: "The defendant is to remain on bail pending probation and sentencing, June 21st. [¶] You are ordered to return on that date at 8:30 in the morning and that will be for sentencing."
In sum, upon accepting Noh's guilty plea and entering his conviction, the trial court simply ordered Noh to return for sentencing one month later. The record establishes the trial court failed to engage in the mandated inquiries of section 1166 before allowing Noh to remain on bail.
As explained, upon Noh's conviction pursuant to the plea of guilty, the trial court was required to commit Noh to custody unless, upon considering the protection of the public, the defendant's flight risk and other factors, "the court concludes the evidence supports its decision to allow the defendant to remain out on bail." (§ 1166.)
The remaining question is the consequence of the trial court's noncompliance with the requirements of section 1166. As indicated, because the law disfavors forfeitures, including the forfeiture of bail, section 1166 must be strictly construed in favor of the surety to avoid the harsh results of forfeiture. (People v. Ranger Ins. Co., supra, 9 Cal.App.4th at p. 1305, 12 Cal.Rptr.2d 343.) The balance of section 1166 provides that upon the defendant's commitment, "his or her bail is exonerated, or if money is deposited instead of bail it must be refunded to the defendant or to the person or persons found by the court to have deposited said money on behalf of said defendant." Because Noh's commitment to custody upon his guilty plea was mandatory absent a factual determination, supported by a statement of reasons on the record, that it was appropriate to allow Noh to remain on bail, the bail must be exonerated.[6]

DISPOSITION
The order denying Seneca's motion is reversed with directions to vacate the forfeiture and exonerate the bond. Seneca shall recover costs on appeal.
We concur: CROSKEY, J., and KITCHING, J.
NOTES
[1] An order denying a motion to set aside a forfeiture is appealable. (People v. Ranger Ins. Co. (1996) 51 Cal.App.4th 1379, 1382-1383, 59 Cal.Rptr.2d 777.)
[2] All further statutory references are to the Penal Code, unless otherwise indicated.
[3] The minute order states: "The court's tentative is to deny the motion. Counsel to submit documentation as to legislative intent. The People present a photocopy of Chapter 570 from Legislative Digest. The attorney for the surety faxes 63 pages of committee report for 1999 California Assembly Bill 476. The court reads and considers above documents as well as minutes of hearings held 8-25-99 and minutes of hearings held 3-23-99. The court adopts its tentative ruling and denies motion."
[4] The sentence "The public safety shall be the primary consideration" was inserted by Statutes 1987, chapter 644, section 2. (51 West's Ann. Pen.Code, 2001 Cumulative Pocket Part, Hist. & Stat. Notes foil. § 1275, p. 261.)
[5] We note the recently decided case of People v. Ranger Ins. Co. (2001) 93 Cal.App.4th 1286, 113 Cal.Rptr.2d 759, reached the opposite conclusion, holding the plain, unambiguous language of section 1166 indicates it "does not apply to negotiated pleas." (Id. at p. 1291, 113 Cal.Rptr.2d 759.) However, that decision failed to examine the pertinent legislative history and we believe its interpretation of section 1166 is overly narrow.
[6] If our interpretation of section 1166 is not what the Legislature intended, the statute could use prompt clarification. (See International Longshoremen's & Warehousemen's Union v. Los Angeles Export Terminal, Inc. (1999) 69 Cal.App.4th 287, 304, fn. 6, 81 Cal.Rptr.2d 456, and cases cited therein.)